# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRETT DEBEAULIEU,**

      **Plaintiff,**

**v.**                                                                                        **Case No: 6:20-cv-120-LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Brett Debeaulieu ("Claimant") appeals the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability benefits. (Doc. 1). The Claimant raises a single argument challenging the Commissioner's final decision and, based on that argument, requests that the matter be reversed and remanded for further proceedings. (Doc. 19 at 8-12). The Commissioner argues that the Administrative Law Judge ("ALJ") committed no legal error and that her decision is supported by substantial evidence and should be affirmed. (*Id*. at 13-16). Upon review of the record, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further proceedings.

**I.**      **Procedural History**

This case stems from the Claimant's March 26, 2015 application for disability insurance benefits ("DIB"), in which he alleged a disability onset date of September 1, 2011. (R. 66, 225-26). The application was denied on initial review and on reconsideration. The matter then proceeded before an ALJ, who held a hearing on October 22, 2018. (R. 29-56). The Claimant and his representative attended the hearing. (*Id*.). On February 25, 2019, the ALJ entered a decision

denying the Claimant's application for disability benefits. (R. 17-22). The Claimant requested review of the ALJ's decision, but the Appeals Council denied his request. (R. 1-3). This appeal followed.

## II.     The ALJ's Decision

The ALJ performed the five-step evaluation process set forth in 20 C.F.R. § 404.1520(a)(4) in reaching her decision.[1] First, the ALJ found the Claimant met the insured status requirements of the Social Security Act through March 31, 2012, and that he has not engaged in substantial gainful activity since the alleged onset date (September 1, 2011). (R. 19). These findings are significant because a claimant seeking DIB is eligible for such benefits where he demonstrates disability on or before his date last insured. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Claimant was therefore required to demonstrate that he became disabled sometime between September 1, 2011 and March 31, 2012. *Id*.

At step two, the ALJ found the Claimant did not suffer any severe impairments prior to his date last insured. (R. 20-21). Accordingly, the ALJ concluded that the Claimant was not disabled from his alleged onset date (September 1, 2011) through his date last insured (March 31, 2012). (R. 21). Given this conclusion, the ALJ did not proceed to the remaining steps. (*See* R. 21-22 (citing 20 C.F.R. § 404.1520(c))).

---

[1] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

**III.   Standard of Review**

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.   Analysis**

The Claimant raises a single issue on appeal – the ALJ erred by finding that his sole impairment, ulcerative colitis ("UC"), was not a severe impairment. (Doc. 19 at 10-12). Considering the parties' respective arguments, the Court agrees with the Claimant.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe" and has lasted or is expected to last for at least twelve months. 20 C.F.R. §§ 404.1505(a), 404.1520(a)(4)(ii), (c); *Barnhart v. Walton*, 535 U.S. 212, 216 (2002). An impairment or combination of impairments is "severe" if it "significantly limits [the claimant's] physical or mental

ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" include the abilities to: 1) walk, stand, sit, lift, pull, reach, or carry; 2) see, hear, and speak; 3) understand, carry out, and remember simple instructions; 4) use judgment; 5) respond appropriately to supervision, co-workers, and unusual work situations; and 6) deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b) (2016).[2]

"An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two is a threshold inquiry that "allows only claims based on the most trivial impairments to be rejected"); *see also* 20 C.F.R. § 404.1521(a) (2016) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Although the claimant bears the burden of proof in establishing that he suffers from a severe impairment or combination of impairments, "claimant's burden at step two is mild." *McDaniel*, 800 F.2d at 1031. If the ALJ finds the claimant has even one severe impairment, then he or she must proceed to the next step.

The Claimant, who worked as an acrobatic performer, began suffering from nausea, fever, chills, night sweats, abdominal pain, bloody diarrhea, and weight loss around the alleged onset date. (R. 1023). On November 17, 2011, the Claimant presented to the emergency room complaining of abdominal pain. (*Id.*). He was admitted the same day for additional testing and treatment, which resulted in a diagnosis of inflammatory bowel disease. (R. 1021). The Claimant was discharged on November 22, 2011. (*Id.*).

---

[2] Effective March 27, 2017, section 404.1521(a) was moved to section 404.1522(a). *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (Jan. 18, 2017).

The Claimant returned to the emergency room on December 16, 2011 complaining of continued abdominal pain. (R. 1069). He was admitted the same day and was eventually diagnosed with severe Clostridium difficile colitis with toxic megacolon, severe inflammatory bowel disease/ulcerative colitis, lower gastrointestinal bleed, anemia, severe weight loss and malnutrition secondary to malabsorption, hypokalemia, hypoalbuminemia, and small bilateral pleural effusions. (*Id*.). After the Claimant's condition stabilized, he was discharged on January 13, 2012. (R. 1070).

The Claimant began treating with Dr. Ira Shafran, a gastroenterologist, on February 13, 2012. (R. 1314). The Claimant reported feeling stable and that his UC was in remission. (*Id*.). The Claimant, however, still complained of fatigue, weakness, and weight loss. (R. 1315). Dr. Shafran adjusted some of the Claimant's medications and directed him to return in a few months. (*Id*.).

Shortly after the Claimant's date last insured, on April 12, 2012, the Claimant returned to Dr. Shafran. (R. 1312). The Claimant reportedly ran out of steroids and his symptoms resultantly worsened with increased bloody stools. (*Id*.). The Claimant's physical examination, however, was unremarkable. (*Id*.). Dr. Shafran assessed the Claimant with UC with mild relapse, coincident with the elimination of steroids. (R. 1313).

The Claimant continued to treat with Dr. Shafran after the date last insured, including on May 10, 2012, July 17, 2012, August 2, 2012, September 17, 2012, October 3, 2012, and October 25, 2012. (R. 1305-11). During that timeframe, the Claimant initially reported that he was "slowly regaining stamina and strength" and, while he hoped to return to work soon, he was not working in order to save money and "take care of himself." (R. 1310-11). While it appears the Claimant's UC was stable at his August 2012 visit with Dr. Shafran (R. 1309), it appears to have

worsened sometime later that month resulting in increased bloody stools. (R. 1307). As a result, the Claimant requested "more powerful" treatments to control his UC, including Remicade infusions, which were eventually performed later in 2012. (R. 1306-07). Despite new treatments, in October 2012, Dr. Shafran noted that the Claimant reported his stamina, strength, and weight were trending downward and, on physical examination, he appeared to be "highly symptomatic." (R. 1305). The Claimant's UC continued to worsen after 2012 and eventually required surgical reconstruction of his intestines. (*See* R. 1301).[3]

At the hearing before the ALJ, the Claimant testified that prior to his first hospitalization he was in the restroom all the time, had no energy, and laid in bed most of the day. (R. 37). This eventually caused him to go to the emergency room in November 2011. (*Id*.). Over the course of his hospitalizations, the Claimant's father took care of him. (R. 38). The Claimant testified that after being discharged in January 2012 he was unable to walk up the stairs to his apartment. (R. 41). Between January 2012 and July 2012, the Claimant characterized himself as being in "remission" and "recovery mode," with his focus on regaining the weight and strength he lost during his hospitalizations. (R. 42-43). The Claimant struggled to gain weight during this period and was tired all the time, but he was able to make meals and do a little laundry. (R. 41, 43). He testified that he did not think he could work at the time because of the constant need to use the restroom. (R. 52). Moreover, he testified that he never regained enough strength to return to his job as a performer. (R. 44). The Claimant's UC flared in September 2012, causing him to lose stamina and weight. (*Id*.).

The ALJ considered the foregoing evidence (and other evidence) at step two and summarized

---

[3] The Claimant was eventually awarded supplemental security income benefits beginning in March 26, 2015. (R. 17, 21).

her findings as follows:

> [T]he claimant was definitely ill for a couple of months prior to his date last insured, March 31, 2012, but based on the claimant's reports and testimony, he was feeling better by mid-January of 2012, was in "recovery mode" until June or July of 2012, and was in "full remission" by September of 2012.  Based on existing medical records, the claimant's treatment did not begin again until June of 2013. . . . [B]ased on the evidence of record, the undersigned finds that the evidence fails to establish an impairment or combination of impairments that could be considered severe for the requisite twelve-month period.

(R. 21).

The Claimant challenges various findings underpinning the ALJ's step two determination. Specifically, the Claimant argues that the ALJ's determination that he was in "full remission" by September 2012 and that he did not resume treatment until June 2013 are belied by the record, which show that he remained symptomatic and was treated throughout the relevant period and beyond. (Doc. 19 at 10-11).  The Claimant also argues that the ALJ overlooked his severe weight loss and its effect on his ability to perform basic work activities.  (*Id*. at 11-12).  For these reasons, the Claimant argues that the ALJ's step two determination is not supported by substantial evidence. (*Id*.).

The Commissioner, on the other hand, contends that the ALJ's decision is supported by substantial evidence because, as the ALJ found, the evidence shows the Claimant was sick from November 2011 through January 2012 and improved over the following months.  (*Id*. at 14-15). Accordingly, the Commissioner argues that the ALJ properly determined that the Claimant did not suffer from a severe impairment for a period of at least twelve months.  (*Id*. at 15-16).

The ALJ's determination that the Claimant did not suffer from a severe impairment for the requisite time period largely hinges on the Claimant's testimony, namely his belief that he was recovering and in remission after his second hospitalization, and the lack of treatment following January 2012.  (R. 21).  While the record supports the finding that Claimant's condition improved

enough for him to leave the hospital, it does not, as the ALJ seems to find, show that the Claimant's recovery was quick or without issue.

First, the record does not contain any evidence showing the Claimant achieved "full remission" before the last date insured or in the months following the relevant period as the ALJ found (R. 21 (finding the Claimant "was in 'full remission' by September of 2012")). While the Claimant testified that he was recovering and believed he "was technically [in] remission" following his second stint in the hospital (R. 42-43), he never testified that he achieved full remission. Instead, the Claimant testified that following his second hospitalization he remained weak and tired and did not believe he could return to work due to the frequency of his bowel movements. (R. 43-44, 52).

Further, the Claimant's treating gastroenterologist, Dr. Shafran, never characterized him as being in full remission during the relevant period. (R. 1314-15). To the contrary, when discussing the Claimant's plan of care in February 2012, Dr. Shafran discussed using rectal therapies "as much as possible to achieve remission and ultimately, if necessary, Remicade therapy if he is unable to maintain a deep remission off prednisone." (R. 1315).

Dr. Shafran also never characterized the Claimant as being in full remission in the months immediately following the relevant period. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (stating "[e]vidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits might be rewarded") (internal quotations and citation omitted). In April 2012, Dr. Shafran assessed the Claimant with a mild relapse of his UC. (R. 1313). And during the next visit, in May 2012, Dr. Shafran explained that he would "love to get [the Claimant] in full remission." (R. 1311). While the Claimant's UC appears to have stabilized during the next two months (R. 1309-10), Dr. Shafran's treatment notes and the Claimant's

testimony show that the Claimant's condition began to worsen sometime in late August or early September 2012 (R. 44, 1307-08), which is around the time the ALJ found the Claimant was in full remission (R. 21). His worsening condition and the accompanying symptoms, such as fatigue and frequent bowel movements, could be viewed as affecting the Claimant's ability to perform basic work activities, such as sitting, standing, or walking. 20 C.F.R. § 404.1521(b) (2016). Considering this evidence, the Court finds the ALJ's assessment of the Claimant's recovery/remission is not supported by substantial evidence.

Second, the record belies the ALJ's determination that treatment of Claimant's UC restarted in June 2013. As discussed above, the Claimant routinely treated with Dr. Shafran following his second hospitalization. (R. 1304-15). Dr. Shafran's treatment evolved over time and, because of the Claimant's deteriorating health in late 2012, eventually included Remicade infusions. (*Id*.). Considering this evidence, the Court finds the ALJ's assessment of the Claimant's course of treatment is not supported by substantial evidence.

In light of the foregoing, the Court concludes the ALJ's ultimate determination that the Claimant was not suffering from a severe impairment for a period of at least twelve months is not supported by substantial evidence. Accordingly, the case will be reversed and remanded so the ALJ can determine whether the Claimant has carried his mild burden of showing that his UC was a severe impairment that lasted or was expected to last for at least twelve months. *McDaniel*, 800 F.2d at 1031.

V.   **Conclusion**

Accordingly, it is **ORDERED** that:

1. The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. §

    405(g).

2. The Clerk is **DIRECTED** to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 8, 2021.

*[signature]*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Angela L. Neel
Administrative Law Judge
Office of Hearings Operations
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-8338